**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ROBERT LEE EDWARDS,** | : | |
| | : | Civil Action No. 15-5780 (ES) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| **SHERRY YATES, et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

**SALAS, DISTRICT JUDGE**

Plaintiff Robert Lee Edwards ("Plaintiff"), a prisoner currently confined at the Adult Diagnostic and Treatment Center in Avenel, New Jersey, seeks to bring this action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and ordered the Clerk of the Court to file the Complaint. (D.E. No. 3).[1] On May 2, 2016, Plaintiff filed an Amended Complaint with the Court. (D.E. No. 13, Amended Complaint ("Am. Compl.")).

At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1914A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Amended Complaint should be dismissed.

---

[1] Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

**I. BACKGROUND**

Plaintiff brings this civil rights action, pursuant to 42 U.S.C. § 1983, against Defendants Sherry Yates, SCO Jones, Sergeant Sankowski, Lieutenant Hoeler, Major Skaminski, Mr. Ozvart, Bruce Davis, and Mr. Slaughter. The following allegations are taken from the Plaintiff's brief (D.E. No. 1-3, Brief in Support of Complaint ("Br."))[2] and his Amended Complaint, and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

In approximately September 2010, Plaintiff maxed out on his two consecutive terms to be served in a "general penal facility" and was transferred to the Adult Diagnostic and Treatment Center ("ADTC") to begin serving his third and final prison term. (Br. at 1). Plaintiff was placed on "Three-Wing" where he was assigned by Classification to be a Wing Worker. (*Id*. at 2). On several occasions, Plaintiff entered the Laundry and Group Rooms where he discovered wing officer SCO Jones with his shirt open and pants undone and an inmate named Lynch in close proximity. (*Id*.). SCO Jones began making lewd comments to Plaintiff and inappropriately touching him in the context of showing him martial arts moves. (*Id*.). Plaintiff felt uncomfortable with the physical touching and told SCO Jones, "Stop touching me, it is not part of your duty unless it's search or pat-frisk." (*Id*.). Plaintiff reported the conduct by SCO Jones and later heard

---

[2] Plaintiff's brief mainly comprises what appear to be factual allegations relating to certain of the defendants named in his Complaint. (*See* Br. at 1-9). Those factual allegations both repeat and expand on the factual allegations contained in Plaintiff's Amended Complaint. Plaintiff also includes legal argument (*see* Br. at 10-13) and attaches several exhibits (*see id.* at PA 1 through PA 19). Although Plaintiff did not file such a brief along with his Amended Complaint, he expressly incorporates his previously filed brief by reference (Am. Compl. ¶ 9). Thus, the Court will consider arguments made in Plaintiff's brief as well as his Amended Complaint, as he is a *pro se* litigant, in order to aid in deciding whether granting leave to amend a second time would be futile. *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.")

him state to another inmate that he had already "spoke[n] with Assistant Superintendent Davis about getting that damn Edwards [i.e., Plaintiff] off the wing." (*Id*. at 3).

Shortly after, SCO Jones conducted a search of Plaintiff's cell and allegedly found a piece of rubber, glue, rubber bands, and a pointed nail clipper. (*Id*.). As a result, Plaintiff was placed in the Closed Custody Unit ("CCU"). (*Id*.). While in CCU, Plaintiff purposefully injured himself to force Department of Corrections ("DOC") to transport him out of the building to a hospital. (*Id*. at 4). Subsequently, Plaintiff's "weapons charge," based on the items SCO Jones found in his cell, was voided. (*Id*.).

On or about July 22, 2014, Plaintiff was removed from his room on "Two-Wing" and placed in CCU without explanation. (*Id*. at 5). The next day, a Special Investigation Unit Investigator came to speak with Plaintiff and informed him that a "Threatening to Harm Staff" charge had been lodged against him. (*Id*.). On July 28, 2014, Plaintiff was cleared of that charge; however, he was not permitted to return to the room on Two-Wing in which Mental Health Personnel placed him. (*Id*. at 6). Instead, Plaintiff was forced back into the same dormitory environment from which Mental Health had removed him. (*Id*.). Plaintiff requested to be placed in a "safe" room on Two-Wing or in protective custody; both requests were denied. (*Id*.). Plaintiff was then charged with "Refusing a Housing Assignment," which triggered a post-traumatic stress disorder ("PTSD") episode, resulting in Plaintiff's placement in a psychiatric observation room and transfer to the "Stabilization Unit" at Northern State Prison. (*Id*.).

On August 5, 2014, Plaintiff was returned to ADTC Pre-Hearing Detention based on the "Refusing Housing Assignment" charge. (*Id*.). On August 7, 2014, Disciplinary Officer Ozvart found Plaintiff guilty without first permitting the Special Investigation Unit to investigate his protective custody request and denial. (*Id*. at 6-7). On August 9, 2014, Plaintiff appealed the

results of the hearing and Assistant Superintendent Bruce Davis upheld the guilty finding. (*Id*. at 7).

From August 2014 through February 2015, Plaintiff submitted numerous grievances about the emotional suffering he was being forced to endure while confined in Administrative Segregation, including being forced to double-bunk in a sex-offender treatment facility. (*Id*. at 8).

Plaintiff is seeking monetary and injunctive relief.

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner (i) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B); (ii) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b); or (iii) brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to dismiss *sua sponte* any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding as an indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To

survive *sua sponte* screening for failure to state a claim,[3] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### 2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

B. Analysis

1. **Defendant Yates**

    a. **Protective Custody and Refusing Housing Assignment Charge**

Plaintiff alleges that on or about July 27, 2014, Administrator Yates authorized Plaintiff to be placed in Pre-Hearing Detention on the charge of Refusing Housing Assignment. (Am. Compl. ¶ 5; Br. at 6). Plaintiff alleges that this was in violation of his rights under the New Jersey Administrative Code ("N.J.A.C.") because he had previously requested protective custody, but that request was denied. (Am. Compl. ¶ 5; Br. at 6). Plaintiff further alleges that Defendant Yates failed to vacate the guilty finding on his Refusing Housing Assignment charge. (Am. Compl. ¶ 5).

The exact nature of Plaintiff's claim based on these facts is unclear. To the extent Plaintiff alleges that denying his request for protective custody violated his constitutional due process rights, "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). An inmate does not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level, security classification, or place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (finding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *see also Thomaston v. Meyer*, No. 12-4563, 2013 WL 2420891, at *1 (3d Cir. Jun. 5, 2013) (holding that denial of inmate's request for particular code status is not a deprivation of a protected liberty interest). Likewise, an inmate does not have a due process right to remain at, or be transferred to, a prison of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). Therefore, to the extent Plaintiff alleges that Defendant Yates's denial of Plaintiff's request for protective custody violated his due process rights, this claim will be

dismissed without prejudice.

To the extent Plaintiff alleges that Defendant Yates violated his rights under N.J.A.C. § 10A:5-5.1—the specific regulation that governs protective custody requests—that claim is without merit. As specifically stated by the regulation:

> If an inmate voluntarily requests placement in Protective Custody, he or she shall complete, sign and submit to the appropriate Custody Supervisor Form 146–I Voluntary - Protective Custody Consent. The reasons for requesting Protective Custody must be indicated on the form. If the inmate's reasons cannot be verified, are deemed to be frivolous by the Administrator or designee or if the conditions forming the basis for the voluntary placement have abated or no longer exist, placement in Protective Custody may be denied or the inmate may be released from Protective Custody.

N.J.A.C. § 10A:5-5.1(b). In Plaintiff's case, he admits that he did not fill out the appropriate form seeking protective custody, which is the initial step he is required to take in order to be granted protective custody. (Br. at 7). As such, this claim will be dismissed without prejudice.[4]

Next, to the extent Plaintiff is alleging a procedural due process violation arising out of his disciplinary hearing, it is well established that "[p]risoners . . . may not be deprived of life, liberty or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Specifically, at a prison disciplinary hearing, due process requires that the inmate: (1) appear before an impartial decision-making body; (2) be given not less than 24 hours written notice of the charges against him; (3) be afforded the opportunity to call witnesses and present documentary evidence; (4) be permitted assistance from an inmate representative; and (5) receive a written

---

[4] Plaintiff also alleges that all Defendants were "arbitrary and capricious" in their treatment of Plaintiff's due process rights. (Am. Compl. ¶¶ 4, 9-13). The Court construes this claim as one arising under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq*. The APA, however, governs final agency action, not actions by individual prison employees. *See Lesser v. Humphrey*, 89 F. Supp. 474, 476 (M.D. Pa. 1950) ("The prison system is under the administration of the Attorney General and not the District Courts. The Court has no power to interfere with the conduct of the prison or its discipline."). Additionally, the APA governs federal agency action and Plaintiff is confined in a state institution. *See* 5 U.S.C. § 551(1) ("'[A]gency' means each authority of the Government of the United States . . . ."). Thus, any claims rooted in the APA are dismissed with prejudice.

decision explaining the decision-maker's conclusions. *Id.* at 563-71. However, inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (holding that not all sanctions resulting from prison disciplinary hearings affect protected liberty interests). Plaintiff does not assert here that any of the sanctions imposed—including 15 days of detention, 90 days of Administrative Segregation, and 30 days of loss of recreation privileges—affect any protected liberty interest. Moreover, Plaintiff does not allege that he was denied any rights guaranteed by *Wolff*. As such, this claim is also dismissed without prejudice.

Finally, to the extent Plaintiff alleges that Defendant Yates somehow violated his rights under state law when she upheld the results of his disciplinary hearing on the charge of Refusing a Housing Assignment, the Court also finds that claim without merit. In fact, Plaintiff does not appear to dispute the fact that he did refuse his dormitory housing assignment; instead, he argues that he could not be found guilty on this charge because he had requested protective custody. However, the two issues are separate. When informed that he was to be transferred to a new wing of the prison, Plaintiff refused said assignment while simultaneously seeking protective custody. When evaluating just such a claim, the New Jersey Appellate Division stated that "[a] request for protective custody is not a defense for refusing placement in general custody." *Farra'd v. N.J. Dep't of Corr.*, No. A-0669-10T1, 2012 WL 555303, at *2 (N.J. Super. Ct. App. Div. Feb. 22, 2012). This, combined with the fact that the decision on whom to place in protective custody is discretionary by statute, moves the Court to dismiss this claim without prejudice.

### b. Double-Bunking

Plaintiff further alleges that Defendant Yates violated his constitutional rights when she caused him to be housed in a two-man room in Administrative Segregation. (Am. Compl. ¶ 5). He asserts that it "caused tremendous emotional suffering because of plaintiff's [PTSD]." (*Id.*). Plaintiff also argues that his move to a two-man room violated his rights under the Americans with Disabilities Act ("ADA"). (*Id.*).

Initially, to the extent Plaintiff is arguing that his due process rights were violated by his placement in a cell with another prisoner, the argument fails because it is well-settled that prisoners do not have a due process right to be single-celled. *See Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)).

To the extent Plaintiff is claiming a violation of his Eighth Amendment rights because Defendant Yates was deliberately indifferent to his PTSD, that argument fails as well. The test for whether a prison official acted with deliberate indifference to a serious medical need is whether the defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). To establish a constitutional violation, the indifference must be deliberate and the actions intentional. *See Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 242 (3d Cir. 2012). Put another way,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.

In order to satisfy the test, a medical need must be recognized as sufficiently serious so as to warrant attention. A medical need is serious if it is one that has been "diagnosed by a physician

as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987). The Third Circuit has recognized that a "serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979).

Here, Plaintiff has failed to allege any facts that would amount to deliberate indifference on the part of Defendant Yates. Even assuming, *arguendo*, that PTSD is considered a serious medical need and that Plaintiff claimed he was suffering from it, Plaintiff alleges no facts suggesting that Defendant Yates knew double-bunking could trigger a PTSD episode. Accordingly, Plaintiff has not adequately pleaded that Defendant Yates acted with deliberate indifference to his serious medical need. Therefore, Plaintiff's claim is dismissed without prejudice.

Moving to Plaintiff's ADA claim, Title II of the ADA states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA applies to state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Here, Plaintiff has not alleged facts sufficient to show that the prison placed him in a two-man room "by reason of" his alleged disability. Plaintiff alleges that the prison ignored his disability in order to justify his placement in said room, not that they placed him in the room because of discriminatory animus based on his alleged PTSD. *See Brown v. Pa. Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008). Accordingly, Plaintiff's ADA claim is also dismissed without prejudice.

**2. SCO Jones**

Plaintiff next alleges in his Amended Complaint that Defendant Jones is liable for failing to protect Plaintiff's constitutional rights by "[writing] the Disciplinary Charge on plaintiff for Refusing Housing Assignment." (Am. Compl. ¶ 9). Plaintiff alleges that Defendant Jones failed to protect him when he denied Plaintiff's request for protective custody and instead wrote him up for refusing a housing assignment that had already been deemed inappropriate by mental health staff. (*Id.*).

To establish a failure to protect claim, inmates must demonstrate that (1) they are "incarcerated under conditions posing a substantial risk of serious harm" and (2) the prison official acted with "deliberate indifference" to their health and safety. *Farmer*, 511 U.S. at 834. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Bracy v. Pa. Dep't of Corr.*, 571 F. App'x 75, 78 (3d Cir. 2014). Additionally, failure-to-protect claims require a showing that the official's deliberate indifference caused the prisoner harm. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

As with Defendant Yates, Plaintiff has not alleged any facts that Defendant Jones knew that Plaintiff suffered from PTSD or that giving him a disciplinary charge might trigger a PTSD episode. Also, Plaintiff has not alleged any discrete harm he suffered as a result of Defendant's actions. Accordingly, Plaintiff has not pleaded sufficient facts to support a finding of deliberate indifference, and Plaintiff's claims are dismissed without prejudice.[5]

---

[5] Plaintiff also cites violations of the Sixth Amendment, the Thirteenth Amendment, and "International law, which forbids involuntary servitude." These citations are not paired with any factual allegations whatsoever, and are thus dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

To the extent Plaintiff intended to raise any claims with regard to SCO Jones's "inappropriate[] touching in the context of showing [Plaintiff] martial arts moves" (Br. at 2), Plaintiff has failed to state a claim. As one Court in this District has noted:

> Several circuits have found that sexual abuse may violate contemporary standards of decency and therefore meet the first requirement of an Eighth Amendment violation. *See, e.g., Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005); *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). However, such abuse must be "severe or repetitive." *Boddie*, 105 F.3d at 862. Isolated incidents of verbal harassment or touching do not constitute an Eighth Amendment violation. *See Boxer X*, 437 F.3d at 1111 ("[A] female prison guard's solicitation of a male prisoner's manual masturbation, even under threat of reprisal, does not present more than *de minimis* injury."); *Jackson*, 158 F. App'x at 661–62 (rubbing and grabbing prisoner's buttocks by corrections officer held to be "isolated, brief, and not severe"); *Berryhill v. Schiro*, 137 F.3d 1073, 1076 (8th Cir. 1998) (brief touch to prisoner's buttocks by civilian prison official not a sexual assault under the Eighth Amendment); *Boddie*, 105 F.3d at 862 (isolated incidents where female corrections officer verbally harassed male prisoner, touched his penis, and pressed against him with her breasts found "despicable . . . [b]ut [ ] do not involve a harm of federal constitutional proportions").

*Pantusco v. Sorrell*, No. 09-3518, 2011 WL 2148392, at *7 (D.N.J. May 31, 2011). An unpublished Third Circuit case made a similar finding:

> While it is possible for sexual abuse of a prisoner to violate the Eighth Amendment, *see Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997), a small number of incidents in which a prisoner is verbally harassed, touched, and pressed against without his consent do not amount to such a violation. *Id.* Rather, "isolated episodes of harassment and touching . . . are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Id.*

*Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014) (per curiam). Here, Plaintiff alleges that Defendant Jones made inappropriate comments to him and would touch his arms against his will under the guise of showing him martial arts moves. (Br. at 2). While these alleged actions appear inappropriate, they do not "involve a harm of federal constitutional proportions." *Obiegbu*,

581 F. App'x at 121. Therefore, this claim will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 3. Sgt. Sankowski

Plaintiff next alleges that Sergeant Sankowski similarly failed to protect Plaintiff by not putting him in protective custody when asked, though it is unclear as to what exactly Plaintiff is alleging Defendant Sankowski did or did not do. (Am. Compl. ¶¶ 9-10).

First, Defendant Sankowski is mentioned only once in Plaintiff's brief, wherein, after Plaintiff complained to Defendant Sankowski about being sent back to his Wing by another SCO, Defendant Sankowski said, "I am not the third-floor sergeant, and there is nothing I can do." (Br. at 5). In Plaintiff's Amended Complaint, this morphed into an allegation that Defendant Sankowski violated the Eighth Amendment by failing to protect Plaintiff's "liberty interests." (Am. Compl. ¶ 10). Plaintiff never specifies as to what those liberty interests are, and the one piece of specific information in Plaintiff's brief, namely that Defendant Sankowski told Plaintiff that he would not overrule an SCO's order outside of his jurisdiction, is not clearly violative of anything.

Because Plaintiff's claim against Defendant Sankowski is merely an "unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, it fails to meet the pleading standard set forth by Federal Rule of Civil Procedure 8(a). Indeed, Plaintiff did not plead any "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Therefore, because Plaintiff did not plead any facts implicating Defendant Sankowski in a constitutional deprivation, Plaintiff's claims against Defendant Sankowski are dismissed without prejudice.

### 4. Lt. Hoeler and Major Skaminiski

Next, Plaintiff alleges that Defendants Hoeler and Skaminski failed to protect Plaintiff's rights when they "signed off" on Plaintiff's Refusing Housing Charge, thus ultimately resulting in his placement in administrative segregation. (Am. Compl. ¶ 11). Plaintiff contends that this was a violation of protocol because he had requested protective custody. (*Id.*). However, there are no allegations in either Plaintiff's Amended Complaint or in his brief that Defendants Hoeler and Skaminiski knew Plaintiff requested placement in protective custody. Even if they had known, though, there is no statutory reason that would keep Defendants Hoeler and Skaminiski from authorizing a disciplinary charge written up by an SCO.

Plaintiff makes much of N.J.A.C. § 10A:5-5.1(b), which reads, as noted above: "If an inmate voluntarily requests placement in Protective Custody, he or she shall complete, sign and submit to the appropriate Custody Supervisor Form 146-I . . . [and if] an inmate's reasons cannot be verified [or] are deemed to be frivolous . . . placement in Protective Custody *may be* denied . . . ." (Emphasis added). Plaintiff argues that this provision means he was required to be placed in protective custody once he so requested. (*See* Br. at 7, 10-13; Am. Compl. ¶¶ 10-11). There are two problems with this reasoning. First, even if Defendants Hoeler and Skaminski had violated § 10A:5-5.1, this section of the Administrative Code contains no explicit private right of action and Plaintiff does not argue that such a right of action can be read into the regulation. *See Drake v. Muniak*, No. 13-3868, 2016 WL 1162375, at *8 (D.N.J. Mar. 24, 2016). Second, the plain terms of the regulation give prison officials discretion on whether to grant such requests—it is not mandatory to place someone in protective custody just because that person requests it.

Plaintiff's Amended Complaint does not allege any other factual content against either Defendant Hoeler or Skaminski in relation to "signing off" on the Refusing Housing Charge. Thus,

14

the bare allegation against these defendants suffers from the same detriment as did the allegation against Defendant Sankowski, as discussed *supra*, § II.B.3. Therefore, because Plaintiff's allegations against Defendants Hoeler and Skaminski are devoid of sufficient factual content, and because the regulation Plaintiff cites creates no private cause of action and is discretionary in nature, Plaintiff's claims against these defendants are dismissed without prejudice.

Finally, Plaintiff argues that Defendant Skaminski "denied Plaintiff his television" while in administrative segregation. (Am. Compl. ¶ 1). However, inmates have no constitutional right to television. *See*, *e.g.*, *Lyons v. Wetzel*, No. 12-1357, 2012 WL 4033682, at *5 (M.D. Pa. July 17, 2012); *Riley v. Snyder*, 72 F. Supp. 2d 456, 460 (D. Del. 1999); *accord Scheanette v. Dretke*, 199 F. App'x 336 (5th Cir. 2006) (finding denial of television not cruel and unusual punishment); *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995) (same). Therefore, Plaintiff's claim that Defendant Skaminiski unconstitutionally denied him television is dismissed with prejudice.

### 5. Mr. Ozvart

Plaintiff next names Defendant Ozvart, ostensibly for proceeding with a hearing on the disciplinary charge that resulted from Plaintiff's housing refusal. (Am. Compl. ¶ 11). Plaintiff seems to argue that Defendant Ozvart should have dismissed the charge without holding a hearing based on Plaintiff's word that the disciplinary charge was bogus. This argument runs counter to Plaintiff's earlier argument that he was denied due process of law when he was charged with a disciplinary infraction and put into administrative segregation. Indeed, he concedes that he was forced to have a hearing, the decision in which he then appealed, meaning he received all the due process the Constitution requires.

Because Plaintiff's claim against Defendant Ozvart contains nothing more than a concession that he was afforded due process, the claim is dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

**6. Bruce Davis**

Plaintiff next alleges that Defendant Davis, an Assistant Superintendent of ADTC, is liable for an Eighth Amendment violation because he did not recuse himself from the case on appeal from Defendant Ozvart's hearing. (*Id.* ¶ 12). Plaintiff submits evidence that Defendant Davis was part of the team that heard the appeal of his disciplinary hearing. (*See* Br. at PA 4). Plaintiff argues that, because he submitted a § 1983 complaint against Defendant Davis in 2001, Defendant Davis may hold a negative bias toward Plaintiff and thus should have played no part in the adjudicatory process here. (Am. Compl. ¶ 12). This is not so.

Plaintiff offers no evidence of bias; he merely suggests bias by presenting the fact that he and Defendant Davis were once adversaries in another lawsuit and the disposition of his appeal was unfavorable. This is not sufficient. *See Speight v. Minor*, 245 F. App'x 213, 217 (3d Cir. 2007) (per curiam) (noting that in prison disciplinary hearings, the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in circumstances underlying the charge); *see also Booth v. Lorenzo*, 275 F. App'x 113, 114 (3d Cir. 2008) ("First, we reject [plaintiff's] unsupported claims of bias. To the extent that his claims have a foundation, they are grounded in his dissatisfaction with the rulings in the District Court. [plaintiff's] displeasure does not require recusal of [the Judge]."); *Atwell v. Dean*, 211 F. App'x 86, 87 (3d Cir. 2006) (holding recusal of judge not required when defendant had filed criminal complaint against same judge in the past). In the absence of a showing that the hearing officer

was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," *Greer v. Hogston*, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. *See, e.g., Redding v. Holt*, 252 F. App'x 488 (3d Cir. 2007).

Because Plaintiff offers no evidence of bias aside from his own displeasure, it does not appear that Defendant Davis's recusal was necessary. Involvement in a lawsuit over a decade beforehand does not automatically render Defendant Davis unable to preside over a disciplinary hearing for Plaintiff. *See Speight*, 245 F. App'x at 217 ("If a prisoner could disqualify hearing officers through instituting lawsuits against them, a prison's ability to conduct disciplinary hearings would be seriously compromised."). Therefore, the claim against Defendant Davis is dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 7. Mr. Slaughter

Plaintiff lastly alleges that Defendant Slaughter, another Assistant Superintendent of ADTC, is guilty of colluding to violate Plaintiff's Eighth Amendment rights by claiming, on an Administrative Remedy Form, that no procedural standards were violated when Plaintiff was denied protective custody and placed in administrative segregation. (Am. Compl. ¶ 13). As discussed earlier, *see supra*, § II.B.4, the granting of protective custody is discretionary. Therefore, Defendant Slaughter's assertion that no procedural rules were violated was not the beginning of "a conspiracy" to violate Plaintiff's constitutional rights or a failure to protect Plaintiff. Such a statement was merely an accurate statement of fact, and Plaintiff makes no allegations that would implicate Defendant Slaughter in any way. Accordingly, because Plaintiff has not asserted any facts from which the Court could infer a constitutional violation, Plaintiff's claim against Defendant Slaughter is dismissed without prejudice.

### III. MOTION FOR A TEMPORARY RESTRAINING ORDER

Also currently pending before the Court is Plaintiff's Motion for a Temporary Restraining Order. (D.E. No. 15). Plaintiff seeks emergency relief so that he may be put into his preferred housing due to his alleged PTSD. (D.E. No. 15 at 7-11).[6] First, it is well settled that an inmate has no liberty interest in an assignment to any particular prison, custody level, or cell. *See Olim*, 461 U.S. at 244-45; *Asquith v. Dep't of Corr.*, 186 F.3d 407, 411-12 (3d Cir. 1999). Second, Plaintiff concedes that his prison doctor concluded that Plaintiff has "[n]o emotional illness and his refusing dormitory assignment had noting[sic] to do with a mental illness" (Br. at 8), thus negating Plaintiff's argument for emergency relief. Therefore, Plaintiff's Motion for a Temporary Restraining Order is denied with prejudice.[7]

### IV. CONCLUSION

For the reasons stated above, the Amended Complaint will be dismissed in its entirety for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[8] All claims are dismissed without prejudice, except Plaintiff's denial of television claim against Defendant Skaminski, and Plaintiff's APA claim against Defendants Yates, Jones, and Sankowski, which are dismissed with prejudice. However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome

---

[6] The Court uses the ECF-generated page numbers that appear at the header of this document to refer to pages cited therein.

[7] Plaintiff has also filed several motions and letters requesting to supplement and/or amend his Amended Complaint. (D.E. Nos. 11, 14, 18). When conducting the instant initial screening of Plaintiff's claims, the Court considered all submissions. As such, these motions are dismissed as moot.

[8] To the extent the Amended Complaint raises claims under New Jersey state law, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction).

the deficiencies noted herein as to the claims dismissed without prejudice, the Court will grant Plaintiff leave to file a second amended complaint.  An appropriate Order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
